UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOHN REX RIGNEY,                              Case No.  07-52758
                                             Chapter 7
                    Debtor.                   Hon. Marci B. McIvor
_____/

GENE R. KOHUT, Trustee

                    Plaintiff,

v.
                                             Adv. Pro. No. 07-6287

JANICE RIGNEY,

                    Defendant.
_____/


**OPINION SETTING ASIDE DEFAULT JUDGMENT UNDER FED. R. CIV. P. 60(b)(4)**
**OR, IN THE ALTERNATIVE, FED. R. CIV. P. 60(b)(6)**

On September 28, 2010, the District Court for the Eastern District of Michigan

remanded this case to the Bankruptcy Court for further findings consistent with its

"Order Reversing Bankruptcy Court Order Setting Aside Default Judgment and

Remanding for Reconsideration".


I.

FACTUAL BACKGROUND

On November 18, 1998, Defendant Janice Rigney ("Ms. Rigney") obtained a

judgment of divorce from John Rigney.   The Judgment of Divorce awarded Ms. Rigney

real property located at 3439 Baldwin Road, Orion Township, Michigan ("the Baldwin

Road address").   John Rigney was awarded a $10,000.00 lien against the property in the Divorce Judgment.  On November 18, 1998, John Rigney signed a quit claim deed, conveying his entire interest in the property to Ms. Rigney, subject to his lien.  On June 10, 1999, Ms. Rigney paid John Rigney $10,366.20 in full satisfaction of his lien.  Ms. Rigney did not record the quit claim deed she received from John Rigney with the Oakland County Register of Deeds until January 5, 2007.

On March 15, 2007, Ms. Rigney sold the Baldwin Road property to Baldwin Orion Holdings, LLC for $269,887.84.  Both John Rigney and Ms. Rigney signed the purchase agreement, but Ms. Rigney retained the entire proceeds from the sale.

On June 30, 2007, John Rigney (hereinafter referred to as the "Debtor") filed for bankruptcy under Chapter 7 of the Bankruptcy Code.  At the time the Debtor filed for bankruptcy, Ms. Rigney was not a creditor of the Debtor nor was she a co-obligor on any obligation owed by the Debtor.[1]

In July 2007, Ms. Rigney left Michigan and moved to Missouri.  Transcript, August 5, 2009, p. 5-6.  Ms. Rigney purchased property located at 4576 N.W. Berline Road, King City, Missouri ("the Missouri Property").  The warranty deed transferring the Missouri Property to Ms. Rigney was recorded with the Gentry County Register of Deeds on July 18, 2007.

On August 28, 2007, Plaintiff Gene Kohut, the Chapter 7 Trustee of the Debtor's bankruptcy case ("Trustee"), filed an adversary complaint against Ms. Rigney.  The

---

[1]The Debtor's Schedule F (listing the Debtor's unsecured debt) shows that the Debtor owes total unsecured debt of $220,344.44, and Ms. Rigney is not a co-obligor on any of this debt.

Complaint, which was amended on September 11, 2007, alleged that the January 5, 2007 recording of the quit claim deed by Ms. Rigney, which perfected the transfer of the Baldwin Road property from the Debtor to Ms. Rigney, should be avoided either as a preferential transfer pursuant to 11 U.S.C. § 547 or as a fraudulent transfer under 11 U.S.C. § 548. The Amended Complaint also sought a declaratory judgment that one-half of the proceeds of the sale of the Baldwin Road property, that amount being $133,443.92, was owed by Ms. Rigney to the Chapter 7 estate.

On September 11, 2007, the Trustee filed a Certificate of Service stating that the First Amended Complaint was served on Ms. Rigney via first class mail at the Baldwin Road address. Ms. Rigney did not file an answer to the Amended Complaint and a Clerk's Entry of Default was entered on October 3, 2007. On October 8, 2007, the Trustee filed a Motion for Default Judgment, and a Default Judgment was entered against Ms. Rigney on October 11, 2007. The Default Judgment awarded the Trustee $133,443.92 plus interest, pursuant to 11 U.S.C. §§ 547, 548, and 550.

On February 5, 2008, the Bankruptcy Court entered an order authorizing the employment of Special Counsel in Missouri to pursue collection of the Default Judgment in Missouri. On October 21, 2008, Special Counsel, on behalf of the Trustee, filed a Motion for Order of Seizure and Sale of Property in the United States District Court for the Western District of Missouri, seeking to foreclose on Ms. Rigney's Missouri home as a means of satisfying the Default Judgment. On November 5, 2008, Ms. Rigney filed a *pro se* response to the Motion for Order of Seizure. On December 2, 2008, the federal court in Missouri entered an order staying the Motion for Order of Seizure and Sale of Property to give Ms. Rigney an opportunity to challenge the Default Judgment in the

3

Bankruptcy Court for the Eastern District of Michigan.

On January 9, 2009, Ms. Rigney filed a Motion to Set Aside Default Judgment in the Bankruptcy Court, and on February 3, 2009, she filed a Motion to Reopen Adversary Proceeding.  The Bankruptcy Court heard both motions on August 4, 2009.  At the conclusion of the August 4, 2009 hearing, the Bankruptcy Court granted Ms. Rigney's Motion to Reopen and scheduled an evidentiary hearing on the Motion to Set Aside Default Judgment.  The evidentiary hearing was held on August 5, 2009.

On August 6, 2009, the Bankruptcy Court entered an Opinion and Order Granting Defendant's Motion to Set Aside Default Judgment.  In its Opinion, the Bankruptcy Court found that Ms. Rigney's failure to answer the Amended Complaint was due to "excusable neglect", that Ms. Rigney may have a meritorious defense to the allegations set forth in the Amended Complaint, and that given the "extraordinary adverse consequences to the defendant ... this is a case that needs to be decided on the merits."

On September 1, 2010, the Trustee filed a Motion for Summary Judgment on the pending Amended Complaint.

On September 17, 2009, the Bankruptcy Court granted the Trustee's Motion for Preliminary Injunction to prevent Ms. Rigney from selling the Missouri Property until the conclusion of the adversary proceeding.  Docket No. 49.  In that Order, the Bankruptcy Court authorized Ms. Rigney to encumber the Missouri Property in an amount not to exceed $10,000 for the purpose of allowing Ms. Rigney to retain an attorney.[2]  Until this

---

[2]In her Application for Appointment of Pro Bono Counsel, filed with the Court on July 29, 2009 (Docket No. 26), Ms. Rigney states that her income is $1,200 per month.

time, Ms. Rigney was not represented by counsel. Ms. Rigney subsequently retained counsel.

On November 17, 2009, the Bankruptcy Court held a hearing on the Trustee's Motion for Summary Judgment. At that hearing, the Bankruptcy Court denied the Trustee's motion and dismissed the Trustee's Amended Complaint. Further, the Bankruptcy Court granted summary judgment in favor of Ms. Rigney, even though Ms. Rigney had not moved for summary judgment, finding that there were no issues of material fact and that Ms. Rigney was entitled to judgment as a matter of law.

On November 18, 2009, the Trustee filed a Notice of Appeal with the United States District Court for the Eastern District of Michigan, appealing both the Court's Order Granting Defendant's Motion to Set Aside Default Judgment and the Order Granting Summary Judgment In Favor Of Defendant.

On September 28, 2010, the District Court entered an Order Reversing Bankruptcy Court Order Setting Aside the Default Judgment and Remanding for Reconsideration. Specifically, the District Court Order states, in part:

> The bankruptcy court opinion makes reference to rules 60(b)(1) and 60(b)(6) in its decision to set aside the default judgment. See Opinion Granting Defendant's Motion to Set Aside Default Judgment (Docket #30 at 4). Federal Rule of Civil Procedure 60© [sic] provides that a motion made under Rule 60(b)(1) must be brought no later than a year after the entry of the judgment. See Fed. R. Civ. P. 60(c)(1). Because Janice filed her motion to set aside default judgment more than one year after the bankruptcy court's entry of default in this cased [sic], 60(b)(1) is unavailing. Thus, although not explicit, the bankruptcy court could only have relied on Rule 60(b)(6) in setting aside the default judgment. (Order Reversing Bankruptcy Court, p. 10).

---

Her only assets are the Missouri Property and a vehicle. On August 5, 2009, the Court denied the Application because Ms. Rigney has equity in the Missouri Property.

. . . it appears the bankruptcy court did not apply the proper legal standard when ruling on the grounds of 60(b)(6) relief. Accordingly, the Court is therefore required to remand the matter to the bankruptcy court for fuller consideration of whether this case falls with in the rule of subsection (b)(6).

*Id.* at p. 16.

On October 1, 2010, the Bankruptcy Court entered on order requiring the Trustee and Ms. Rigney to file briefs on the applicability of Fed. R. Civ. P. 60(b)(6) to the facts of this case. Both parties filed briefs on October 28, 2010.

II.

ANALYSIS

Fed. R. Civ. P. 55(c), made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7055, provides that "for good cause shown, the court may set aside an entry of default, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 60(b) states in its entirety:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or

6

applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(c)(1) sets forth the timing for seeking relief under Fed.

R. Civ. P. 60(b).  Rule 60(c)(1) states:

**(c) Timing and Effect of the Motion.**

**(1) Timing.** A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

The Sixth Circuit has consistently held that Rule 60(b)(6) should be applied only as a means of achieving substantial justice in "exceptional or extraordinary circumstances".  *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).  In this case, the District Court presented the following analysis of the parameters of Rule 60(b)(6):

Rule 60(b)(6) is a catch-all provision that allows a court to vacate a judgment "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Sixth Circuit has consistently held that this provision should be applied only as a means of achieving substantial justice in "exceptional or extraordinary circumstances" when there is "something more" than the grounds set forth in provisions (1) - (5). *See, e.g., Olle v. Henry Wright Corp.*, 910 F.2d at 365; *see also Hooper v. Euclid Manner Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989) (citing *Pierce v. United Mine Workers*, 770 F.2d 449, 451 (6th Cir. 1985)); *Ackermann v. United States*, 340 U.S. 193, 199 (1950). The rule does not indicate what factors courts should consider in determining whether there is an extraordinary circumstance, but "it provides the court with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* at 366 (citing *Klapprott v. United States*, 335 U.S. 601 (1950)).

District Court Order, p. 15-16.  *See also, Rogan v. Countrywide Home Loans (In re Brown)*, 413 B.R. 700, 705-706 (6th Cir. BAP 2009).  *But see, LPP Mortgage, LTD v.*

7

*Brinley*, 547 F.3d 643 (6th Cir. 2008)(case did not address the issue of whether Rule 60(b)(6) could be invoked if another section of Rule 60(b) was available although the Court did state that "the Trustee was entitled to relief under Fed. R. Civ. P. 60(b)(5) and (6)").

Noting that the District Court directed this Court to consider whether this case falls within the ambit of subsection (b)(6) and noting that Rule 60(b)(6) should only be applied when a defendant is precluded from a defense under subsections (1) - (5), this Court is compelled to consider all grounds for setting aside the Default Judgment under Rule 60(b). Once the Court considers whether Ms. Rigney could have requested relief under Fed. R. Civ. P. 60(b)(1)-(5), this Court can then determine whether Rule 60(b)(6) applies.

A.     <u>Grounds for Setting Aside Default Judgment under Rules 60(b)(1)-(5)</u>

The District Court correctly found that Ms. Rigney could not bring her Motion to Set Aside Default Judgment under Rule 60(b)(1) because of the one-year time limitation set forth in Rule 60(c)(1). Specifically, the District Court stated,

> Federal Rule of Civil Procedure 60© [sic] provides that a motion made under Rule 60(b)(1) must be brought no later than a year after the entry of the judgment. See Fed. R. Civ. P. 60(c)(1). Because Janice filed her motion to set aside default judgment more than one year after the bankruptcy court's entry of default in this cased [sic], 60(b)(1) is unavailing.

Because the one-year time limitation also applies to Rule 60(b)(2) and Rule 60(b)(3), neither of those grounds for setting aside the Default Judgment apply in this case.

With respect to Fed. R. Civ. P. 60(b)(4), the District Court ruled that, Ms. Rigney

could not avail herself of relief under Rule 60(b)(4) because, even though Ms. Rigney did not receive actual notice of the lawsuit, "there is no allegation or finding that service of process was improper or that there was a violation of due process. . . " and both are required for the judgment to be void under Fed. R. Civ. P. 60(b)(4). Order Reversing Bankruptcy Court, p. 12.

Upon review of the record, this Court notes that it made no finding that service of process was improper or that there was a violation of due process because the parties did not argue the issue of whether there were grounds to vacate the judgment under Fed. R. Civ. P. 60(b)(4).[3] After this case was remanded, however, both parties filed Supplemental Briefs which addressed the sufficiency of service of the Amended Complaint on Ms. Rigney. After considering the briefs and reviewing the entire record and the relevant case law, this Court finds that: (1) service of process in this case was improper under the relevant bankruptcy rules; and (2) the failure to set aside the Default Judgment in the case would violate the due process clause of the United States Constitution.

1.      Service of Process was Improper Pursuant to Fed. R. Bankr. P. 7004.

This Court begins its analysis with the Federal Rules of Bankruptcy Procedure, which controls service of complaints in adversary proceedings. Under Rule 7004,

---

[3]Ms. Rigney was unrepresented by counsel both at the time she filed her Motion to Set Aside Default Judgment and at the evidentiary hearing. *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. *See, Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

9

service of a summons and complaint can be made in any of three ways: (1) personal service pursuant to the Federal Rules of Civil Procedure; (2) personal service pursuant to the Michigan Rules of Civil Procedure; or (3) first-class mail, pursuant to the Federal Rules of Bankruptcy Procedure. *In re Barry,* 330 B.R. 28, 33 (Bankr. D. Mass. 2005). Because it is undisputed that service of the Amended Summons and Complaint was attempted only by mail, and not by personal service, this Court must examine the sufficiency of service pursuant to the Federal Rules of Bankruptcy Procedure, specifically Fed. R. Bankr. P. 7004(b).

> Rule 7004(b) provides, in relevant part:
>
> Except as provided in subdivision (h) [pertaining to insured depository institutions], in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:
>
> (1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the **individual's dwelling house or usual place of abode** or to the place where the individual regularly conducts a business or profession.
> ...
>
> (8) Upon any defendant, it is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.

(Emphasis added).

Courts have consistently required that service by mail of a summons and complaint on a defendant must be at the defendant's "dwelling house or usual place of abode". *Barry*, 330 B.R. at 33; *DuVoisin v. Arrington (In re Southern Industrial Banking*

10

*Corp.)*, 205 B.R. 525, 533 (E.D.Tenn.1996), *aff'd* 112 F.3d 248 (6th Cir.1997). Mailing a summons and complaint to a "last known address" is not sufficient. *Barry*, 330 B.R. at 33; *DuVoisin*, 205 B.R. at 533. The Court in *Barry* succinctly summarizes the law regarding service by mail of a summons and complaint:

> Courts have interpreted 7004(b)(1)'s requirement of service at the individual's "dwelling house or usual place of abode" strictly: "The use of the abbreviated procedure of service by mail in bankruptcy proceedings requires a higher standard of care when serving a party defendant." *McElhaney v. Student Loan Services (In re McElhaney)*, 142 B.R. 311 (Bankr. E.D. Ark. 1992). Thus, a moving party in a contested matter "must comply strictly with Rule 7004, which requires that service by mail be made using the correct address for the party defendant." *Green v. Sheppard (In re Sheppard)*, 173 B.R. 799, 805 (Bankr. N.D. Ga. 1994). Mailing to a respondent's 'last known address' is not sufficient to effect service under this rule if the respondent is not living at that address at the time service is attempted. The service must be made upon the defendant's "dwelling house or usual place of abode," as determined at the time of service.

*Barry*, 330 B.R. at 33.

The court in *DuVoisin v. Arrington (In re Southern Industrial Banking Corp.)*, 205 B.R. 525, 533 (E.D.Tenn.1996), *aff'd* 112 F.3d 248 (6th Cir.1997) discusses the differences in service required by Fed. R. Bankr. P. 7004 (for summons and complaints) from the service required by Fed. R. Bankr. P. 7005 (for service of pleadings other than a complaint) in order to highlight the requirement that a summons and complaint must be served on a "dwelling house or usual place of abode". The *DuVoisin* court states:

> Bankr. R. 7005, which concerns service of pleadings and other papers other than process, incorporates Fed. R. Civ. P. 5, which, in Rule 5(b), permits service on an attorney or unrepresented party "by mailing it to the attorney or party at the attorney's or party's last known address." The scope of Rule 5 as applied to pleadings is expressly limited in Rule 5(a) to "every pleading *subsequent to the original complaint.*" (Emphasis added.) Fed R. Bankr. P. 7004(b)(1) concerning service of process refers not to the defendant's last known address, but to his or her "dwelling house or

11

usual place of abode or to the place where the individual regularly conducts a business or profession."

Considering the due process ramifications of any rule governing service of process, the court cannot consider this distinction drawn by the drafters of these rules insignificant. The bankruptcy rule is drawn with specific language not found in Rule 5, to increase the likelihood that a defendant will actually be found by mail addressed to him or her and will receive actual notice that a civil action has been commenced against him or her. Once a civil action has been commenced and process served, a defendant is on notice of the need to protect his or her own interests and to defend himself or herself in the pending litigation. In light of this fact, Rule 5 allows much greater laxity with respect to service of pleadings and other papers on persons who have already been served with process.

*Id.* at 533. In addition, the determination of whether a place is an individual's "dwelling house or usual place of abode" is especially critical because there is no requirement that the summons be left with anyone that could notify the party as to its receipt. *See,* 10 *Collier on Bankruptcy,* ¶ 7004.03 (15th ed. 2007).

This Court finds that the service of the Amended Summons and Complaint to the Baldwin Road address on September 11, 2007 does not satisfy the notice requirements of Fed. R. Bankr. P. 7004(b)(1). The record shows that Ms. Rigney did not reside at the Baldwin Road address on September 11, 2007; at that time, it was not her "dwelling house or usual place of abode". At the evidentiary hearing on the Motion to Set Aside the Default Judgment, Ms. Rigney testified that she moved to Missouri in July 2007:

Q    So my first question is when did you move to Missouri?

A    I bought the property July 12th of 2007.

Q    And when did you move?

A    Well, I went down – it was the end of July.  I was moved in at the end of July.

*   *   *

Q       Ms. Rigney, after you moved at the end of July when you say that --
        when you say that you moved, did you ever go back and forth? I
        mean have you been back to Michigan since then? I mean prior to
        now for this proceeding.

A       Yeah. I came back, and I loaded up the bus. Then I left again.

Q       When did you come back to --

A       I don't remember. I don't recall the dates.

Q       Do you remember what month it was?

A       It was the end of July.

Q       Did you come back after the end of July?

A       No.

Transcript, August 5, 2009, pp. 5-6, 11-12. Ms. Rigney's testimony that she moved to Missouri in July of 2007 is corroborated by the warranty deed transferring the Missouri property to Ms. Rigney, which was recorded on July 18, 2007. Docket No. 28, Exhibit 13, Warranty Deed.[4]

Based on this evidence, the record is clear that on September 11, 2007, Ms. Rigney's "dwelling house or usual place of abode" was 4576 Berline Road, King City, Missouri, and not 3439 Baldwin Road, Orion Township, Michigan. Therefore, the

---

[4]The Court is aware that Ms. Rigney stated in her January 8, 2009 letter that she moved on June 6, 2007. While somewhat inconsistent with her testimony, this Court finds the inconsistency inconsequential because either date pre-dates the date of service of the Amended Summons and Complaint, and her testimony about her move, which occurred more than three years ago, remains credible.

13

service of the Amended Summons and Complaint was not proper because it did not comply with Fed. R. Bankr. P. 7004(b)(1). This Court finds that, because Ms. Rigney did not have actual notice and because service was not proper, the Default Judgment is void under Fed. R. Civ. P. 60(b)(4).

2. <u>Service Did Not Comport with the Due Process Clause of the Constitution</u>

In addition to the service of process not satisfying the requirements of Fed. R. Bankr. P. 7004(b)(1), this Court also finds that the service of process effected in this case was in violation of the Due Process Clause of the Constitution because the Amended Complaint was not served in a manner reasonably calculated, under the circumstances, to give notice to the Defendant, Ms. Rigney.

The seminal case concerning proper notice is *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In the *Mullane* case, the United States Supreme Court addressed the issue of the circumstances in which notice by newspaper publication would be sufficient notice. The Supreme Court first noted: "Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." *Id.* at 313. The Supreme Court then went on to analyze what type of notice was required by the Due Process Clause of the Constitution, if personal service was not possible. The Supreme Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [citations omitted]. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean*, *supra*, and it must afford a reasonable time for those interested to make their appearance,

14

*Roller v. Holly, supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. . . .

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, [citations omitted], or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Id.* at 314. Following the directive of the United States Supreme Court in *Mullane*, if personal service is not possible or not required, the Constitutional standard requires that notice be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action". *Id.* at 314.

The Trustee makes three arguments that the notice provided comports with due process: (a) Ms. Rigney received actual notice of the Complaint; (b) service of Ms. Rigney at the Baldwin Road address was reasonably calculated to apprise her of the pending action; and (c) Ms. Rigney's culpable conduct resulted in her not receiving service. This Court rejects all three of these arguments, as set forth below.

a.    Ms. Rigney Did Not Receive Actual Notice.

The Trustee continues to argue in his Supplemental Brief that Ms. Rigney did, in fact, receive actual notice of the lawsuit and, therefore, service was proper and there was no violation of due process. The Trustee reiterates his reliance on the Affidavit of Trustee's counsel.

15

This Court again rejects this argument. This Court has found, in its Opinion Setting Aside the Default Judgment, that Ms. Rigney did not receive actual notice, and that finding was affirmed by the District Court. Since the Trustee continues to rely on statements made in the Affidavit, the Court reiterates its earlier finding that the Affidavit is not credible on the issue of when Ms. Rigney received notice of the Amended Complaint. Paragraph 11 of the Affidavit refers to information allegedly received from the Debtor John Rigney, Ms. Rigney's *ex-husband.* The Trustee's statement about what was said is hearsay, and in the absence of an affidavit signed by John Rigney, this Court gives no weight to paragraph 11 of the Affidavit. Paragraph 12 of the Affidavit states that counsel spoke to Ms. Rigney in November 2008, fourteen months after the Complaint was sent, and inquired as to why she had not responded to the lawsuit. The Affidavit states that, "[s]he confirmed that she received the summons and complaint, but decided to leave town to avoid the matter." The Affidavit does not specify when Ms. Rigney allegedly received the Amended Complaint and her alleged statement that she left town to avoid the matter is at odds with Ms. Rigney's consistent and credible testimony that she moved to Missouri more than one month before the Amended Complaint was ever filed. Furthermore, Ms. Rigney testified that she left Michigan because of a drug problem, not for any reason related to this Complaint. The Deposition taken by Special Counsel of Ms. Rigney in August 2008 elicited the following testimony:

> Q.      Okay. So you bought the house in May – you sold the house, excuse me, in May of 2007. And you received cash of $269,000.00
>
> You purchased another house for a hundred and twenty-five

16

thousand dollars, which left you with approximately a hundred and forty

thousand dollars.

       Then you purchased a car of approximately $12,000.00, and so

that left you with approximately $130,000.00.

       So where is the remainder of that money?

A.     Well, I gave the kids $7,000 each.

               *     *     *

Q.     Okay. What did you do with the remainder of the money?

A.     Well, I had a drug problem up in Michigan.

Q.     Okay. Did you continue that drug problem here in Missouri?

A.     No, I did not.  I come down here to get away from it.

Q.     Okay. So are you – do you still have the over a hundred thousand dollars?

A.     I don't have any money.

Q.     Okay. And I'm just trying to figure out where you spent it.

A.     That's where it went, drugs.

Deposition of Janice Rigney, August 29, 2008, pp. 7-9, attached to Plaintiff's Response

and Objection to Defendant's Motion to Set Aside Default Judgment.  Based upon Ms.

Rigney's testimony that she moved to Missouri in July 2007, and that she moved

because of a drug problem, this Court does not find the Trustee's Affidavit credible for

the purposes of establishing that Ms. Rigney had actual notice of the Summons and

Complaint.

b.    Service at the Baldwin Road Address Was Not Reasonably
Calculated to Apprise Ms. Rigney of the Pending Action.

The Trustee next argues that, even if Ms. Rigney did not receive actual notice,

sending the Complaint to the Baldwin Road address was service in a manner

reasonably calculated to provide notice of the Amended Complaint.  The Trustee cites

two cases for the proposition that sending a complaint to a defendant's "last known

address" is sufficient service for Constitutional purposes.  Specifically, the Trustee cites

the cases of  *DePiero v. City of Macedonia (In re DePiero)*, 180 F.3d 770, 788 (6th Cir.

1999)("the City had no information about plaintiff's whereabouts that would give reason

to suspect he would not actually receive notice mailed to his last known address") and

*Trimble v. U.S. Dep't of Agric.*, 87 Fed. Appx. 456, 458 (6th Cir. 2003)("the Secretary's

effort to send the complaint to Trimble's last known address is 'reasonably calculated

under all the circumstances' to notify Trimble of the proceedings.").

This Court finds both the *DePiero* case and the *Trimble* case distinguishable from

the instant case.  In *DePiero v. City of Macedonia (In re DePiero)*, 180 F.3d 770, 788

(6th Cir. 1999), the plaintiff DePiero received a parking ticket, which had been placed on

his windshield.  When he failed to respond, the City of Macedonia served him with a

summons and complaint and obtained a default judgment.  In challenging the default

judgment, the plaintiff argued that sending a summons by regular mail was inadequate

notice to provide due process.  The *DePiero* court disagreed, finding that "the City had

no information about plaintiff's whereabouts that would give reason to suspect he would

not actually receive notice mailed to his last known address." *Id.*  This case is

distinguishable both legally and factually from the instant case.  Legally, the *Depiero*

18

case is not a bankruptcy case subject to Fed. R. Bankr. P. 7004(b), which requires service of a summons and complaint on the defendant's "dwelling house or usual place of abode" at the time of service. Factually, the plaintiff in *Depiero* did not contest that the address used in the service of the summons by regular mail was his address. The plaintiff was merely contesting the legal sufficiency of the notice by regular mail to his address.

The case of *Trimble v. U.S. Dep't of Agric.*, 87 Fed. Appx. 456, 458 (6th Cir. 2003) is similarly distinguishable. In *Trimble*, the plaintiff argued that his due process rights were violated because he was not notified in a reasonable manner of the administrative action against him regarding his alleged violations of the Horse Protection Act. Trimble had been notified of the action by certified mail at his last known address. *Trimble*, 87 Fed. Appx. at 458. The court found that "the Secretary's effort to send the complaint to Trimble's last known address is 'reasonably calculated under all the circumstances' to notify Trimble of the proceedings." *Id.* at 458 citing *DePiero v. City of Macedonia,* 180 F.3d 770, 788-9 (6th Cir. 1999). As in the *DePiero* case, the service requirements for service of the administrative complaint did not require service on defendant's dwelling place or abode nor did defendant argue that the address at which he was served was an invalid address.

This Court finds no case law which supports the Trustee's assertion that serving Ms. Rigney at the Baldwin Road address was proper service that comports with the due process requirements of the United States Constitution. First, the Trustee had no basis for assuming that Ms. Rigney still lived at the Baldwin Road address on September 11, 2007. The Trustee knew that Ms. Rigney sold the Baldwin Road property in March

19

2007.   Second, this Court finds that due process requires that the Trustee make some reasonable effort to locate Ms. Rigney's current address before sending the Amended Summons and Complaint to Ms. Rigney's "last known address".  *Mullane,* 339 U.S. at 317 (when service is accomplished by mail or publication, a plaintiff must exercise some effort in finding an address for the defendant).   In this case, the Trustee could have located Ms. Rigney in Missouri with minimal effort.   This conclusion is based on statements made by the Trustee in Plaintiff's Motion for Preliminary Injunction.   Docket No. 32.   In that document, the Trustee indicates that, after the Default Judgment against Ms. Rigney had been obtained, the Trustee located Ms. Rigney in Missouri and retained Special Counsel in Missouri to collect on the Default Judgment.   Special Counsel located Ms. Rigney, conducted a creditors' examination and, on October 21, 2008, Special Counsel filed a Motion for Order for Seizure and Sale of the Missouri Property.   Docket No. 32, ¶¶ 10-12.   It appears to this Court that, with minimal investigation prior to the filing of the Complaint, the Trustee could have located Ms. Rigney at her address in Missouri.

The Trustee also argues that, because Ms. Rigney had lived at the Baldwin Road address for twenty-two years and had allowed the Debtor to live at the address for seven years, service at that address was proper.   This Court disagrees.   While these facts may support the Trustee's position that the Baldwin Road address was Ms. Rigney's "last known address", a party's last known address is not the address for proper service under Fed. R. Bankr. P. 7004.   Service of a summons and complaint by mail under Rule 7004 requires service at a defendant's "dwelling place or abode", not at a defendant's "last known address".

20

c.    <u>Ms. Rigney Did Not Purposefully Avoid Service</u>.

The Trustee's final argument is that Ms. Rigney is at fault for not receiving service at the Baldwin Road address because she "put herself in a position where she would not receive mail at the Orion [the Baldwin Road address] property."  Trustee's Supplemental Brief, p. 7.   The Court finds no support in the record for the argument that Ms. Rigney intentionally avoided service.  Ms. Rigney could not have purposefully avoided the Trustee's lawsuit because she had no reason to believe that she would be a defendant in a preference action or in a fraudulent transfer action.  Having received the Baldwin Road property pursuant to the Divorce Judgment in 1998, Ms. Rigney could not have anticipated that the Debtor's bankruptcy, filed in 2007, would have anything to do with her.  In addition, there is no evidence, other than the Trustee counsel's Affidavit which the Court has already determined is not dispositive, that Ms. Rigney left Michigan to avoid this lawsuit.  Instead, the evidence in this case suggests that Ms. Rigney left Michigan to overcome a drug problem.  *See*, Deposition of Janice Rigney, August 29, 2008, pp. 7-9, attached to Plaintiff's Response and Objection to Defendant's Motion to Set Aside Default Judgment .

Ms. Rigney also had no duty to leave a forwarding address when she moved and, therefore, was not negligent in failing to do so.  While it may be unusual for people to move and not leave a forwarding address, nothing in the law requires a person to leave a forwarding address.  Ms. Rigney testified that she advised each of her creditors, individually, of her new address. Transcript, August 5, 2009, p. 10.  Further, Ms. Rigney is not a debtor in bankruptcy, nor is she a co-obligor on any of the Debtor's debts, nor she a creditor of the Debtor.  Therefore, Ms. Rigney was under no obligation to the

21

Bankruptcy Court to provide a current address. The Trustee's implication that Ms. Rigney had some sort of obligation to leave a forwarding address is unsupported by any law.

For the above stated reasons, this Court finds that Plaintiff's service of the Amended Complaint on Ms. Rigney did not comply with the Fed. R. Bankr. P. 7004 and did not meet the due process requirements of the United States Constitution. Lack of notice because of improper service violates a defendant's due process rights and renders a judgment void. *In re Ruehle*, 296 B.R. 146, (Bankr. N.D. Ohio 2003); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir.1995). Therefore, Defendant's Motion to Vacate Default Judgment is GRANTED pursuant to Fed. R. Civ. P. 60(b)(4).[5]


B.      Grounds for Setting Aside the Default Judgment under Rule 60(b)(6)

Assuming *arguendo* that service was found to be proper and Ms. Rigney is unable to avail herself of Fed. R. Civ. P. 60(b)(4), she clearly is entitled to relief under Fed. R. Civ. P. 60(b)(6).   Rule 60(b)(6) is available only if Ms. Rigney cannot bring her Motion to Vacate Default Judgment under Fed. R. Civ. P. 60(b)(1) - (5).  As stated by the Sixth Circuit's Bankruptcy Appellate Panel:

> . . . Rule 60(b)(6) is applied only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Hopper*, 867 F.2d at 294. That "'something more', then, must include unusual and extreme situations where principles of equity mandate relief" coupled with a showing that if relief is not granted extreme and undue hardship will result. *Olle*, 910 F.2d at 365; *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 597 (6th Cir.2006).

---

[5]In the interests of thoroughly examining all subsections of Fed. R. Civ. P. 60(b), this Court notes that Fed. R. Civ. P. 60(b)(5) does not apply to the facts of this case.

*In re Brown*, 413 B.R. 700, 705 (6th Cir. BAP 2009). The instant case presents the unusual and extreme circumstance where principles of equity mandate relief *and* undue hardship will result if relief is not granted.

In simplest terms, the Trustee is attempting to seize assets which belong solely to Ms. Rigney to satisfy debts owed only by the Debtor, John Rigney. The asset which the Trustee is seeking to seize (Ms. Rigney's residence in Missouri) is an asset purchased with the proceeds of the sale of the Baldwin Road property, a house owned solely by Ms. Rigney pursuant to a Judgment of Divorce entered on November 19, 1998. It would a miscarriage of justice to allow the Trustee to take the Missouri Property, in which neither the Debtor nor the Debtor's estate has any interest, and sell that Property to satisfy the Debtor's creditors.

A short history of this case is necessary to demonstrate that neither the Debtor nor the Debtor's estate have any interest in the property the Trustee is seeking to seize. Pursuant to a Judgment of Divorce entered on November 18, 1998, Ms. Rigney was awarded real property located at 3439 Baldwin Road, Orion Township, Michigan, subject to a lien in favor of her ex-husband John Rigney in the amount of $10,000. On November 18, 1998, John Rigney signed a quit claim deed, conveying his interest in the Baldwin Road property to Ms. Rigney. On June 10, 1999, Ms. Rigney paid Mr. Rigney $10,366.20 in full satisfaction of his lien. It is undisputed that, as of that point in time, Mr. Rigney had neither a legal nor an equitable interest in the Baldwin Road property.

On January 5, 2007, Ms. Rigney recorded her quit claim deed for the Baldwin Road property. Her failure to record the deed until 2007, however, did not create a property interest in Mr. Rigney. Rather, it exposed Ms. Rigney to the risk that Mr.

23

Rigney might encumber the property by representing to an innocent third party that he retained an interest in the property. The purpose of recording is to alert third parties as to all interests in the property; the failure to record does not alter the rights of the original parties to the transfer.

In March 15, 2007, Ms. Rigney signed a warranty deed transferring title of the Baldwin Road property to Baldwin Orion Holdings company. On that same date, William T. Sheahan Title Company issued a seller closing statement which states "Seller: Janice Rigney" "Cash Due to Seller : $269,887. 84." Also on that date, the Debtor, Mr. Rigney, signed a quit claim deed transferring any interest he had in the Baldwin Road property to Baldwin Orion Holdings. It is unclear why this deed was necessary since it is undisputed that Mr. Rigney had quit claimed his interest in the Baldwin Road property to Ms. Rigney on November 18, 1998 and that the quit claim deed had been recorded on January 5, 2007. Because Ms. Rigney was the sole owner of the Baldwin Road property, she received the proceeds of the sale of that property in the amount of $269,887.84. The Debtor, Mr. Rigney, has never asserted that he had any right to the proceeds of the sale.

On June 30, 2007, Mr. Rigney filed a petition under Chapter 7 of the Bankruptcy Code. His Schedule F shows unsecured debt in the amount of $220,344.44. There are no allegations by the Trustee or any creditor that Ms. Rigney has responsibility for any of this debt. On August 28, 2007, the Trustee commenced this adversary proceeding against Ms. Rigney under 11 U.S.C. § 547(b) and 11 U.S.C. § 548.

While, at the time the Trustee filed the Amended Complaint, the Trustee may have had grounds for believing that Ms. Rigney had received a preferential transfer or a

24

fraudulent transfer, now that the facts are known, there is no legal theory which would allow recovery against Ms. Rigney. Because there is no legal basis under which the Trustee can recover from Ms. Rigney, it would be a manifest injustice to allow the Trustee to enforce the Default Judgment and seize Ms. Rigney's home to pay debts owed by her ex-husband.

As a matter of law, the Trustee's Complaint fails to state a claim against Ms. Rigney. The Trustee alleges, in his Complaint, that the tardy recording of the deed by Ms. Rigney allows the Trustee to avoid the deed and recover part of the proceeds of the sale of the Baldwin Road property for the benefit of Mr. Rigney's bankruptcy estate under 11 U.S.C. § 547. The elements of a preference action are set forth in 11 U.S.C. § 547(b). Section 547(b) states:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made--
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if--
>
> > (A) the case were a case under chapter 7 of this title;

25

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee's allegation that he has an right to recover against Ms. Rigney under 11

U.S.C. § 547(b) is based on 11 U.S.C. § 547(e).  Section 547(e) states:

(e)(1) For the purposes of this section--

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made--

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--

(I) the commencement of the case; or

(ii) 30 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

The language of 11 U.S.C. § 547(e) is not a model of clarity.  However, the

application of § 547(e) is straightforward.  When a party transfers an interest in real

26

property by granting a mortgage or lien to a creditor (usually an exchange for money), that mortgage or lien must be recorded by the creditor within thirty days to avoid any problems if the party files for bankruptcy. If the party files for bankruptcy, a trustee may avoid any mortgage or lien recorded (perfected) within ninety days prior to the filing of the bankruptcy and more than thirty days after the party actually transferred an interest in property to the creditor.

The purpose of 11 U.S.C. § 547(e) is to encourage the prompt recording by creditors of mortgages and liens. If the creditor fails to perfect in a timely manner, and the party granting the security interest files for bankruptcy, the creditor is in danger of having their security interest avoided. If the security interest is avoided, the creditor retains a claim in the debtor's bankruptcy, but the claim is unsecured rather than secured.

There are numerous reasons why the Trustee cannot state a cause of action against Ms. Rigney under 11 U.S.C. § 547. Section 547 exists to allow trustees to recover assets that a debtor transferred to a creditor within ninety days of the filing of the bankruptcy. Mr. Rigney transferred his interest in the Baldwin Road property to Ms. Rigney in 1998 when she paid off his $10,000 lien against the property and he gave her a quit claim deed. After that date, Ms. Rigney was not owed any money by Mr. Rigney and Mr. Rigney had no interest in the Baldwin Road property. Consequently, Ms. Rigney is not, and never has been, a creditor of the Debtor. When Ms. Rigney recorded the deed in January 2007, *she was not perfecting her secured claim against collateral owned by the Debtor*. Instead, she was perfecting an interest in property *which had belonged to her since 1998.* Because Ms. Rigney is not a creditor of the

Debtor and the Debtor had no interest in the Baldwin Road property which he could transfer, the Trustee cannot bring a cause of action against Ms. Rigney under 11 U.S.C. § 547(b) and the timing requirements of 11 U.S.C. § 547(e) simply do not apply. The Trustee's fraud theory under 11 U.S.C. § 548 is similarly without merit. In order to prevail on a fraud theory, the Trustee must show that the Debtor transferred the Baldwin Road property either with the intent to defraud his creditors or for less than reasonably equivalent value. The Debtor transferred his interest in the Baldwin Road property to Ms. Rigney on November 18, 1998, when he signed the quit claim deed. His interest was completely extinguished when Ms. Rigney paid off the $10,000 lien on June 10, 1999. After that date, Mr. Rigney had no legal right to transfer the Baldwin Road property to a third party. The Trustee's fraud theory only works if Mr. Rigney transferred the Baldwin Road property with the intent of defrauding a creditor or for less than reasonably equivalent value. This Court finds that the transfer of the Baldwin Road property pursuant to the Rigneys' Judgment of Divorce was not for the purpose of defrauding a creditor nor was it for less than reasonably equivalent value.

In conclusion, this Court finds that principles of equity mandate relief and undue hardship will result if relief is not granted under Rule 60(b)(6). The Trustee does not have a viable legal theory under either 11 U.S.C. § 547 or 11 U.S.C. § 548 that would allow the Trustee to obtain a judgment against Ms. Rigney had the Default Judgment not been entered. Allowing the Default Judgment to stand would give the Trustee the right to seize an asset owned solely by Ms. Rigney, that being her Missouri residence, to pay off debts solely incurred by the Debtor for which Ms. Rigney has no responsibility. Such a result would be a gross miscarriage of justice. Rule 60(b)(6)

28

exists precisely to prevent such an unfair and unjust result.

III.

CONCLUSION

In summary, this Court grants Defendant's Motion to Vacate Default Judgment pursuant to Fed. R. Civ. P. 60(b)(4). In the alternative, the Motion to Vacate Default Judgment is granted pursuant to Fed. R. Civ. P. 60(b)(6).

Signed on January 05, 2011

```
              /s/ Marci B. McIvor
          Marci B. McIvor
          United States Bankruptcy Judge
```

29